UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

William Graham

    v.                                            Civil No. 06-cv-453-JD

Bruce Cattell, Warden, New
Hampshire State Prison, et al.

**REPORT AND RECOMMENDATION**

Proceeding pro se, William Graham has filed this action pursuant to 42 U.S.C. § 1983 against a number of employees of the New Hampshire State Prison ("NHSP").[1] The complaint is before me for preliminary review to determine whether, among other things, it states any claim upon which relief might be granted. See 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2). For the reasons stated herein, I direct, in an Order issued simultaneously with this Report and Recommendation, that the claim alleging excessive force proceed against defendant NHSP Corporal Kevin Valente in

---

[1] Graham names the following defendants to this action: NHSP Warden Bruce Cattell, NHSP employees Todd Conner, Frank Bergmann, Kevin Valente, Jeff Sweeney, Ann McCoole, Robert MacLeod, First Name Unknown ("FNU") Howland, FNU Susca, FNU Marshall, FNU Lemay, FNU Goulette, and New Hampshire Department of Corrections Commissioner William Wrenn.

his individual capacity, the claim alleging a deprivation of the right to petition the government for a redress of grievances through the administrative grievance procedure be served on Sweeney, Howland, Bergmann, Susca, and Conner, in their individual capacities, and the retaliation claim be served on Marshall, Lemay, Goulette, Cattell, Wrenn, and Macleod in their individual capacities.  I recommend that all of the official capacity claims, the claim alleging denial of access to the courts, the excessive force claim against any NHSP employee other than Valente, and defendant McCoole, be dismissed from this action.

## Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review and to prepare a report and recommendation determining whether the complaint or any portion thereof should be dismissed because:

> (i) the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief under 28 U.S.C. § 1915A(b); or
>
> (ii) it fails to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally.  See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied, Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.  See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

Background

On January 14, 2006, Graham was sitting in a dayroom at the NHSP with several other inmates watching a movie on television. Valente came onto the tier and announced to the inmates that he was going to change the channel so that he could watch football. The inmates tried to convince Valente to allow them to watch the end of the movie, but Valente refused. Valente then announced that any further inmate complaints about the choice of television programming would result in the complaining inmate being locked in his cell. The inmates then left the area. Valente, however, when he did rounds of the housing unit, verbally taunted and antagonized the inmates about the television issue. When Valente taunted Graham, Graham alleges that he called Valente on his taunting behavior, and that the two men then began to challenge each other with physical posturing. Valente then locked Graham into his cell for the night. Graham reports that when he got locked in, he "went off," kicking the door repeatedly. Eventually, a number of NHSP officers, identified by Graham as correctional officers Conners, Bergmann, Valente, Sweeney and NHSP Nurse McCoole, arrived at Graham's cell to restrain him in handcuffs and escort him to the infirmary. After the officers

entered Graham's cell and restrained him, Valente called Graham a "punk-ass bitch" and punched Graham in the forehead.  Graham reports that he has ongoing pain and migraine headaches that started as a result of Valente punching him.

`     On January 20, 2006, Graham sent a request slip to NHDOC Commissioner Wrenn's office requesting that the assault by Valente be investigated.  Graham claims that the prison engaged in an "inquiry" rather than conducting a full-fledged investigation, and that although he gave a statement, he has heard nothing at all since making his report.  Graham further claims that since complaining about the January 2006 assault, he has been denied food in retaliation for reporting the incident, by defendants Marshall, Lemay, Goulette, Cattell, Wrenn, and MacLeod.  Graham claims that he has requested grievance forms to grieve these matters administratively, but that defendants Sweeney, Howland, Bergmann, Susca, and Conner have refused to provide Graham with grievance forms.

Discussion[2]

1.  Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983[3]; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  In order to be held liable for a violation under § 1983, a defendant's conduct must have caused the alleged constitutional deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir.), cert. denied, 522 U.S. 819 (1997).

2.  Excessive Force

---

[2]The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Graham disagrees with this identification of the claims, he must do so by proper objection to this Report and Recommendation or by properly moving to amend his complaint.

[3]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

To state a claim for the use of excessive force by a prison official under the Eighth Amendment, an inmate must demonstrate "unnecessary and wanton infliction of pain." Whitley v. Abers, 475 U.S. 312, 319-20 (1986).  The main inquiry in determining whether prison officials used excessive physical force turns on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," whether or not significant injury is evident. Hudson v. McMillian, 503 U.S. 1, 6-8, 10 (1992) (citing Whitley, 475 U.S. at 320-21).  "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9.  "Not every push or shove, even if it may later seem unnecessary . . . violates a prisoner's constitutional rights." Id. (internal citations omitted).  The Eighth Amendment excludes from constitutional recognition *de minimis* uses of physical force, provided that the force is "not repugnant to the conscience of mankind." Id. at 9-10 (citing Whitley, 475 U.S. at 327) (quoting Estelle, 429 U.S. at 106).

In determining whether a plaintiff has stated a claim for unconstitutionally excessive force, the court should look to the following four factors: (1) "the need for application of force,"

(2) "the relationship between the need and the amount of force that was used," (3) "the extent of injury inflicted," and (4) "whether the force was applied in good faith to maintain or restore discipline or maliciously and sadistically for the very purpose of inflicting harm."  Garcia v. City of Boston, 115 F. Supp. 2d 74, 81 (D. Mass. 2000), aff'd, 253 F.3d 147 (1st Cir. 2001).

Applying the Hudson standard, and the factors set out in Garcia to this case, I find that Graham alleges that excessive force was used against him when he was punched in the head by Valente after he was restrained in handcuffs.  Nothing in the pleadings suggests that a post-restraint punch to the head that was hard enough to cause persistent pain and migraine headaches was warranted under the circumstances.  Graham has alleged that force was used against him by Valente disproportionately to any need that may have existed for such an action, and that as a result, he may well have sustained significant injury.  Graham's description of Valente's taunting and threatening behavior prior to the assault is sufficient to allow for the reasonable inference that the assault by Valente was malicious and conducted with the intent to harm Graham.

Graham's own allegations raise little question that Graham's conduct prior to the assault likely justified his being restrained by the officers.  Accordingly, to the extent that Graham intended an excessive force claim against the officers who restrained him on January 14, 2006, I find that he has not stated any facts which give rise to an inference that the officers acted maliciously to inflict pain.  Instead, Graham describes a scene where he was out of control and physically aggressive, and officers had to restrain him physically in order to restore discipline and maintain institutional order.  While I find that Graham has alleged sufficient facts to state an excessive force claim against Valente for his conduct after Graham was physically restrained[4], I find that he has not alleged that force used by any other individual was unwarranted, and I accordingly recommend that any intended excessive force claims against any officers other than Valente be dismissed.

3.  <u>Right to Petition the Government for a Redress of Grievances/Right of Access to the Courts</u>

Graham alleges that his rights have been violated because his administrative complaint and request for an investigation

---

[4] In an Order issued simultaneously with this Report and Recommendation, I direct that the excessive force claim be served on defendant Valente.

regarding the assault was not appropriately investigated by the prison administration, and also that defendants Sweeney, Howland, Bergmann, Susca, and Conner have refused to provide him with grievance forms so that he may avail himself of prison grievance procedures.  The First Amendment's guarantee of a right to petition the government for a redress of grievances has been characterized as "among the most precious of the liberties safeguarded by the Bill of Rights."  United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967).  The right of petition, in the prison context, means that inmates must be "permit[ted] free and uninhibited access . . . to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers."  Sostre v. McGinnis, 442 F.2d 178, 200 (2d Cir. 1971) (en banc), cert. denied, Sostre v. Oswald, 404 U.S. 1049 (1972) and Oswald v. Sostre, 405 U.S. 978 (1972), overruled on other grounds by Davidson v. Scully, 114 F.3d 12, 13 (2d Cir. 1997).

    The First Amendment right to petition the government for a redress of grievances includes redress under established prison grievance procedures.  See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir.

1988).  Graham's claims are not detailed, but for purposes of preliminary review, they suffice to allege the minimum facts necessary to state a claim for a violation of the right to petition the government through available prison grievance procedures.  Accordingly, in an Order issued simultaneously with this Report and Recommendation, I direct that the claim alleging a denial of access to grievance procedures be served on defendants Sweeney, Howland, Bergmann, Susca, and Conner.

The Constitution further guarantees a right of access to the courts.  Bounds v. Smith, 430 U.S. 817, 828 (1977).  This right is derived from a number of sources, including the First Amendment, the Due Process Clause, and the Privileges and Immunities Clause of the Constitution.  See Simmons v. Dickhaut, 804 F.2d 182, 183 (1st Cir. 1986) (collecting cases).  Although prisoners are not granted all of the constitutional rights guaranteed to nonincarcerated people, they maintain a constitutional right of access to the courts that affords them access to the tools necessary to challenge their criminal cases, criminal convictions and sentences directly or collaterally, to file habeas petitions, or to challenge the conditions of their

confinement through civil rights actions.  See Lewis v. Casey, 518 U.S. 343, 354-55 (1996).

In order to state a claim for denial of access to the courts, a prisoner must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  Lewis, 518 U.S. at 351. Therefore, a prisoner seeking relief under § 1983 for such a violation must allege that the inadequacies of the legal materials and services available to him have hampered his ability to assert an actual legal claim that he is constitutionally entitled to pursue during his incarceration.  Id.

Graham alleges generally that his right of access to the courts has been denied.  However, Graham has not alleged or demonstrated that he has been hindered in pursuing any legal action in any court that he is constitutionally entitled to pursue.  Accordingly, I recommend that Graham's claim of a denial of a right to access the courts be dismissed.

4.  Retaliation

A prisoner's right to petition the government for a redress of grievances under the First Amendment precludes prison officials from retaliating against a prisoner by punishing him

for actions he takes in the exercise of those rights.  See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).  While prison officials may make policy that is reasonably related to legitimate penological interests, even at the expense of certain constitutional rights, Beard v. Banks, ___ U.S. ___, 126 S. Ct. 2572, 2579 (2006) (citing Turner v. Safley, 482 U.S. 78, 89-90 (1987)), "actions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms."  Ferranti v. Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980) (citing McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979)); see also Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993), cert. denied, 512 U.S. 1209 (1994) (prison officials cannot lawfully impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right).

    Graham alleges that he was subjected to retaliation in return for exercising his right to file a grievance regarding the January 2006 assault.  Specifically, Graham alleges that defendants Marshall, Lemay, Goulette, Cattell, Wrenn, and MacLeod denied Graham food in retaliation for his formal accusations against Valente.  While this claim is lacking in details, I find that by alleging that defendants punished him for exercising his

First Amendment rights by withholding food, Graham has stated the minimum facts necessary to establish a retaliation claim and, in my Order issued this date, I direct service of this claim.

5.   Official Capacity Claims

Section § 1983 authorizes suits against state actors operating to deprive citizens of their constitutional rights. Because I have found that Graham has alleged constitutional violations against a number of NHSP employees sufficient to state a cause of action under § 1983, those individuals, defendants Valente, Marshall, Lemay, Goulette, Cattell, Wrenn, MacLeod, Sweeney, Howland, Bergmann, Susca, and Conner, will be defendants to this suit in their individual capacities.

Graham also sued the defendants in their official capacities.  It is well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under § 1983.  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Mich. Dep't of State Police, 491

U.S. 58, 71 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under § 1983). Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. Accordingly, I recommend dismissal of all of the official capacity claims against the defendants to this action.

### Conclusion

For the foregoing reasons, I recommend that the excessive force claim be dismissed against all of the named defendants with the exception of Valente, that the claim alleging denial of access to the courts, that defendant McCoole, and that all of the official capacity claims be dismissed from this action.[5] Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law

---

[5] As previously stated, the remaining claims will be directed served on the appropriate defendants in an Order issued simultaneously with this Report and Recommendation.

Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:   January 31, 2007

cc:     William Graham, pro se