**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

William Graham

      v.                                  Civil No. 06-cv-453-JD

Bruce Cattell, Warden,
New Hampshire State Prison, et al.

**REPORT AND RECOMMENDATION**

Plaintiff William Graham is an inmate at the New Hampshire State Prison's Secure Psychiatric Unit ("SPU"). Graham filed a motion for injunctive relief (document nos. 15 & 18) alleging that he has been assaulted verbally and physically by New Hampshire State Prison Correctional Officers ("COs") Valente, Sweeney, and Conner, in retaliation for the lawsuit he has filed naming those individuals as defendants.[1] Graham seeks an order enjoining Valente, Sweeney, and Conner, from having any contact with him. A hearing on Graham's motion was held before me on April 30, 2007. After consideration of the evidence adduced at

---

[1] In his motion for a preliminary injunction, Graham relates one incident of verbal threatening by Valente. However, no evidence of the incident was presented at the hearing, and I will not consider the incident in making this recommendation on Graham's motion.

the hearing, as well as the written and oral arguments before the Court, I recommend the denial of the motion for a preliminary injunction for the reasons stated herein.

<u>Standard of Review</u>

Preliminary injunctive relief is available to protect the moving party from irreparable harm, so that he may obtain a meaningful resolution of the dispute after full adjudication of the underlying action.  Such a situation arises when some harm from the challenged conduct could not be adequately redressed with traditional legal or equitable remedies following a trial. <u>See</u> <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies are inadequate); <u>see also</u> <u>Acierno v. New Castle County</u>, 40 F.3d 645, 653 (3d Cir. 1994) (explaining irreparable harm and its effect on the contours of preliminary injunctive relief). Absent irreparable harm, there is no need for a preliminary injunction.

The need to prevent irreparable harm, however, exists only to enable the court to render a meaningful disposition on the underlying dispute.  <u>See</u> <u>CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.</u>, 48 F.3d 618, 620-21 (1st Cir. 1995) (explaining the

2

purpose of enjoining certain conduct as being to "preserve the 'status quo' . . . to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs."); <u>see</u> <u>also</u> <u>Stenberg v. Cheker Oil Co.</u>, 573 F.2d 921, 925 (6th Cir. 1978) ("The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.").

A preliminary injunction cannot issue unless the moving party satisfies four factors which establish its need for such relief.  <u>See</u> <u>Esso Std. Oil Co. v. Monroig-Zavas</u>, 445 F.3d 13, 17–18 (1st Cir. 2006) (discussing the requisite showing to obtain a preliminary injunction); <u>see</u> <u>also</u> <u>Ross-Simons</u>, 102 F.3d at 18–19 (explaining the burden of proof for a preliminary injunction). Those factors are:  "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest."  <u>Esso Std. Oil</u>, 445 F.3d at 18.  If the plaintiff is

not able to show a likelihood of success on the merits, the remaining factors "become matters of idle curiosity," insufficient to carry the weight of this extraordinary relief on their own.  See id. (the "sine qua non of the four-part inquiry is likelihood of success on the merits").  Yet, "the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem."  Ross-Simons, 102 F.3d at 19.

### Background

Graham testified at the April 30 hearing that on March 16, 2007, he was assaulted by defendant COs Conner and Sweeney, and that he believes that the assault was in retaliation for Graham's pending federal lawsuit against those COs.  The incident began when Graham was returned to his room from the dayroom seven to ten minutes earlier than he expected.  When Graham questioned the defendants about why his dayroom time was cut short, they did not respond.  At that point, Graham made what he admits was an ill-advised decision to "flood out" his room by placing a styrofoam cup into his toilet and repeatedly flushing the toilet.  When officers responded to the disturbance thus created, Graham threatened to kill himself if he was kept in his room.  Graham was then taken to a nurse for an assessment of his suicidality.

The nurse put Graham in a seclusion room to be placed in four-point restraints.  At that point, Graham stated that he was not actually suicidal and was subsequently returned to his room.

Conner and Sweeney, as well as CO Jonathan Makara, escorted Graham back to his room.  At Graham's room, the three officers held Graham at the door of his room to remove his handcuffs before shutting the door.  Graham claims that two officers yelled at Graham to stop resisting and then pushed Graham across the wet floor, while slapping, punching, and kicking him, before laying him down across his bunk.  Graham alleges that this assault lasted approximately one minute, during which the officers were laughing.  After Graham was laid flat on his bunk, he was lifted up and returned to his door to be unhandcuffed.

At the April 30 hearing, Graham displayed a small, recent scar on his arm that he alleges is the remnants of an injury he received during this incident.  Graham also testified that he was charged with a disciplinary violation for flooding his cell and resisting detention, and that he pleaded guilty to both of those charges.

COs Makara, Sweeney, and Conner also testified at the hearing.  Their testimony was consistent with Graham's until the

point when Graham was returned to his room after being released
from the nurse's care.  The officers testified that at the room
door, Graham pulled away from the officers who were trying to
remove his handcuffs.  The officers then placed Graham down on
his bunk and told him to stop resisting.  When Graham stopped
resisting, he was brought back to his door and uncuffed without
incident.  The officers denied the occurrence of any kicking,
punching or slapping.  They also denied seeing any cuts or blood
on Graham.  Further, the officers testified that, pursuant to SPU
policy, Graham was offered medical attention after the incident,
but that he refused to avail himself of medical care at that
time.[2]

## Discussion

Graham did not introduce evidence at the preliminary
injunction hearing regarding the merits of his underlying
claims.[3]  However, after conducting my preliminary review of the

---

[2]Sweeney and Connor both testified that whenever a SPU
inmate is handcuffed and taken out of his room, he is offered
medical treatment as a matter of policy.

[3]In order to obtain the injunctive relief he seeks, Graham
must establish that he is likely to succeed on the merits of the
claims underlying his action before this Court.  See Ralph v.
Lucent Techs., Inc., 135 F.3d 166, 170 (1st Cir. 1998) (in
evaluating the likelihood of success on the merits pursuant to a
preliminary injunction request, the merits to be considered are

complaint, I found that a number of the claims alleged are viable and may proceed.  The focus of the hearing was on the March 16 incident, which Graham alleges demonstrates that he is likely to be irreparably harmed without the intervention of this Court.

While I found that both Graham and the officers testified credibly, the burden of persuasion, by a preponderance of the evidence, is "squarely on" Graham as the proponent of the injunction.  Ross-Simons, 102 F.3d at 18 (citing Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991)).  As I found the evidence to be evenly balanced, I cannot find that Graham has carried his burden of presenting a preponderance of evidence supporting his position.  Accordingly, even assuming that Graham had demonstrated, at the hearing, a likelihood of success on the merits of his underlying claims, having failed to prove irreparable harm, he cannot succeed in obtaining the preliminary injunctive relief he seeks.  See Narragansett Indian Tribe, 934 F.2d at 5 (listing the "potential for irreparable

the merits of the underlying claims).  While this finding is essential to the success of a motion for a preliminary injunction, in this matter I find it more efficient to consider the likelihood of success on the merits in conjunction with the requirement that Graham demonstrate that irreparable harm will occur to him if this injunction is not granted.

7

injury" as a standard prerequisite for the granting of a
preliminary injunction).

Specifically, I find that while Graham described one
incident where it appears that he may have been treated less than
gently, Graham also admits that the treatment he received was in
direct response to Graham's extremely disruptive behavior.
Graham offered no evidence of any pattern of unprovoked assaults
that would indicate that Graham is likely to be harmed by
defendants Sweeney and Conner in the future.  Graham's hearing
was a full six weeks after the incident in question, and Graham
describes no ongoing or repeated behavior on the part of
defendants to indicate that he is in any present or imminent
danger of further harm.  As I cannot find any basis to conclude
that Graham is at risk of suffering irreparable harm presently,
immediately, or pending final disposition of his underlying
claims, I must recommend that Graham's motion for preliminary
injunctive relief be denied.

Any objections to this report and recommendation must be
filed within ten (10) days of receipt of this notice.  Failure to
file objections within the specified time waives the right to
appeal the district court's order.  See Unauthorized Practice of

<u>Law Comm. v. Gordon</u>, 979 F.2d 11, 13–14 (1st Cir. 1992);

<u>United States v. Valencia–Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:     May 16, 2007

cc:       William Graham, pro se
          Laura E.B. Lombardi, Esq.